**(131 So. 725)**

**JACKSON et al. v. FLORSHEIM BROS. DRY GOODS CO., Limited, et al.**

Nos. 28770, 29204.

Dec. 1, 1930.

On Motion to Dismiss, May 7, 1928.   On Motion to Dismiss, June 2, 1930.

Thomas W. Robertson and John G. Gibbs, both of Shreveport, for plaintiffs.

Lewis A. Newsom, of Shreveport, for intervener.

Wise, Randolph, Rendall & Freyer, of Shreveport, for defendant.

On Motions to Dismiss.

ROGERS, J.

After this suit was at issue between the plaintiff and the defendants, one Harry B. Busbey intervened, and the case was tried on the demands of all the parties litigant. The court below rejected plaintiffs' demands, and rendered judgment in favor of the intervener against the plaintiffs and the defendant Florsheim Bros. Dry Goods Company, Limited. From the judgment in favor of the intervener, the Florsheim Bros. Dry Goods Company, Limited, appealed suspensively, and the transcript was filed in this court under the No. 28770 on June 22, 1927. Subsequently, the plaintiffs appealed devolutively from the judgment against them, and the transcript was filed in this court under No. 29204 on the return day, March 19, 1928. On March 22, 1928, the plaintiffs and appellants applied for an order to use in connection with their appeal, the transcript which had been filed previously in this court under the No. 28770. This order was granted over the written opposition of the Florsheim Bros. Dry Goods Company, Limited. That company then moved to dismiss the appeal for want of a legal transcript. Thereafter the plaintiff and appellants filed a motion for the consolidation of the appeals.

The motion to dismiss must be denied. The application of the plaintiffs and appellants to use for the purpose of their appeal the transcript previously lodged in this court was granted under the authority of rule I, section II, of the Rules of this court. See 136 La. p. viii. The rule reads as follows, viz.:

"Where there is a subsequent appeal in a case or growing out of a case theretofore appealed to this court, the transcript already lodged here, may, on obtaining leave of this court, be used for the purposes of such subsequent appeal, and the transcription of its contents dispensed with."

Under this rule, it is immaterial that the transcript in the appeal No. 28770 was paid for by the Florsheim Bros. Dry Goods Company, Limited, and prepared under the direction of its counsel. The only concern of this court is whether the present appeal is in the same case or grows out of the same case previously appealed here. We find this to be the fact. The motion to consolidate the appeals has been granted, and both transcripts are properly before the court to be considered together. Cf. Rosenberg v. Derbes, 165 La. 407, 115 So. 637.

For the reasons assigned, the motion to dismiss the appeal is denied.

THOMPSON, J.

On motion to dismiss.

The plaintiffs and defendant each claim title to 270 acres of land described in the petition, and the intervener, Busbey, claims to own seven-tenths of 100 acres of said land.

Judgment was rendered in favor of the intervener for the land claimed by him against both plaintiff and defendant and from that judgment the defendant has appealed. Judgment was also rendered in favor of defendant rejecting the plaintiff's demand, and from that judgment the plaintiffs have appealed.

The plaintiffs' appeal is presented in another transcript, No. 29204 on our docket.

In the instant case the intervener has moved to dismiss the appeal of the defendant on the ground that since the transcript was filed in this court the defendant and appellant has sold the land in controversy to the Flobro Corporation and therefore the said appellant has no further interest in the case.

Attached to the motion is a certified copy of the authentic act transferring the property in dispute, which shows that all of the price was on credit and represented by five notes, all of which are secured by the vendor's privilege and special mortgage.

The act of sale specially warrants the title to the property and subrogates the vendee to all rights and action of warranty against the claims of all former proprietors.

It is clear in these circumstances that the appellant has a very vital interest in the prosecution of this appeal, and, if possible, to secure a reversal of the judgment and thereby sustain its transfer of the property. Indeed it is not only to the interest of the appellant to prosecute the appeal, but is its plain duty to do so in carrying out its obligation to its vendee.

The motion to dismiss is therefore denied.

### On the Merits.

The two records as numbered and styled above present two appeals—one by the plaintiffs from the judgment which sustained a plea of prescription of one year and dismissed their suit; the other by the defendants from a judgment which recognized title in the intervener to seven-tenths of 100 acres of the land involved. The two appeals were consolidated in this court, and will be disposed of in one judgment.

The allegations and prayer of the plaintiffs' petition contain some of the elements of a petitory action, of an action of nullity of two judgments, and a claim for damages on account of being deprived of the opportunity of leasing the mineral rights on said land as a result of defendant's pretension of ownership, of the land.

The plaintiffs claim ownership in indivision as heirs of Andrew and Dora Jackson of 270 acres of land described in the petition by courses and distances.

The land claimed constitutes the major part of a tract sold by the three Florsheim brothers to Andrew Jackson, Albert Hammond, Bedney Foreman, Anthony Collins, and Thomas Doty on February 7, 1877. The price of that sale was $4,000, of which $900 was paid in cash and the balance represented by notes, the last one of which was due on October 1, 1880.

The four first-named purchases on December 29, 1886, by notarial act partitioned the land in kind; 129.4 acres was allotted to Andrew Jackson, 100 acres to Albert Hammond, and 82.5 acres each to Bedney Foreman and Anthony Collins. Thomas Doty joined in the act of partition and relinquished in favor of the other four any interest he had in the land.

On November 15, 1912, Anthony Collins by notarial act sold to Andrew Jackson all interest he had acquired in the land either by the original joint purchase or by the act of partition.

There is nothing in the record to show that either Albert Hammond or Bedney Foreman ever disposed of the land allotted to them in the partition.

Some time prior to 1890, and long after the maturity of the notes, foreclosure proceedings were instituted, but all of the proceedings were misplaced or lost. The minutes of the court, however, show that the sale was enjoined and on October 18, 1901, judgment was rendered in favor of Andrew Jackson, plaintiff in injunction, and the said judgment was signed on the following day.

No appeal was taken from that judgment.

But on the day this judgment was rendered the defendant in the present suit filed a peti-

tion in which it claimed to have purchased the property in the foreclosure proceeding on February 8, 1890 and that on account of the loss of the papers it was necessary that a judgment be rendered affirming the adjudication of the land to petitioner.

On March 7, 1903, judgment was rendered recognizing the plaintiff (defendant here) as owner of the land and decreed that all claims of defendants in and to the land be silenced. Andrew Jackson was a party to this suit, and there was no appeal.

On March 8, 1918, Florsheim Bros. Dry Goods Company filed another suit claiming ownership of the land against Andrew Jackson and others in possession of certain parts of the land in which petitioner claimed to be the owner, and on April 6, 1918, judgment was rendered in favor of plaintiff decreeing it to be the owner of the land claimed. As said before, Andrew Jackson was a party to this suit, and there was no appeal from the judgment against him.

It is very clear from the record that Andrew Jackson never reacquired any interest in the 100 acres after the partition allotting the same to Albert Hammond. In fact that is conceded by the plaintiffs, for they have not appealed from the judgment in favor of the intervener.

It is equally clear that the plaintiffs have been divested of all interest in the balance of the land claimed in their petition, as they are precluded from claiming said land by the judgments in favor of Florsheim Bros. Dry Goods Company and against Andrew Jackson, their father.

■ It is contended, however, that the judgments referred to are null and void because they were obtained on fraudulent allegations and false proof. And, to save this attack from the pleaded prescription of one year, the plaintiffs allege that their father and mother had no knowledge of the fraud, and that petitioners did not discover the fraud and false proof on which the said judgments were rendered until within the year preceding the filing of the petition in this case.

The fact is, however, that the plaintiff's father was a party defendant to the two suits and was personally served. He therefore had knowledge of the facts on which said judgments were rendered as set out in the petitions in the two suits.

The plaintiffs' mother died in 1909 some three years after the first judgment was rendered, and the plaintiffs' father died in 1922, over four years after the last judgment was rendered. As the plaintiffs' mother and father must be held to have had knowledge of the facts on which said judgment were rendered for more than a year prior to their respective deaths, so must that knowledge be imputed to the plaintiff heirs. If the mother and father were living, their action to annul the judgments on the grounds alleged would be prescribed. The plaintiffs can have no greater rights than those from whom they claim to inherit.

The plea of prescription was properly sustained.

As has been observed already, the intervener bases his claim to seven-tenths of the 100 acres allotted to Albert Hammond in the act of partition by purchase from some of the heirs of Hammond.

So far as the record discloses, Hammond never parted with his title to the land and at his death the land passed to his heirs.

Nor do the conveyance records show any divesture of Hammond's title which would furnish notice to a person purchasing from

the heirs of Hammond. The adjudication of the land in the foreclosure proceedings was never completed and put of record, and the judgment confirming the adjudication was not rendered until long after the death of Albert Hammond. The heirs were no parties to that proceeding.

■ The petition in that case was directed against Andrew Jackson, Anthony Collins, Tom Doty, and Albert Hammond, and the latter was sought to be cited as an absentee through a curator ad hoc. This proceeding was filed some time in 1901, and the evidence shows that Albert Hammond had died long prior thereto. It is very clear therefore that Albert Hammond was not legally made a party to that proceeding, and his heirs were not bound by that judgment.

Nor were they affected by the judgment of April 6, 1918, for that proceeding was directed solely against Albert Jackson and three of the heirs of his wife, Dora Jackson.

We repeat, therefore, that there was nothing of record to prevent the intervener from obtaining a legal and good-faith title by purchase from the heirs of Albert Hammond.

■ On the trial below, counsel for defendant objected to the admission in evidence of the two deeds under which the intervener claims. The objection was that there was no proof of the signatures to the deeds.

The deeds were executed under private signature and attested by two witnesses. One of the witnesses to each deed made an affidavit to the fact that he was one of the attesting witnesses to the deed and that the parties thereto signed the said deed for the purposes therein expressed. This affidavit was prima facie proof of the genuineness of the deeds, and justified their admission in evidence without further proof. Act No. 68 of 1914.

For the reasons assigned, the judgment in favor of the defendants and against the plaintiffs and the judgment in favor of the intervener against both plaintiffs and defendants are affirmed.

The costs of appeal in No. 29204 to be paid by plaintiffs appellants, and the costs of appeal in No. 28770 to be paid by defendant appellant.